UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20398-RUIZ/LOUIS

UNITED STATES OF AMERICA

vs.

FEDERICO NANNINI,
MAURO NANNINI, and
ALEJANDRO THERMIOTIS,

      **Defendants.**
      _____/

## UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM

This was an insider trading ring driven by want, not need. Federcio Nannini, the insider, tipped material confidential information from his employer to his father and close friend so they could make over a million dollars illegally. Federico, extensively educated, had a respectable job at a global consulting firm and no financial need to commit this crime. Federico's father, Mauro, a former Venezuelan stockbroker and seasoned businessman, had an already active stock portfolio and no need to commit this crime. Federico's friend, Alejandro Thermiotis, an aspiring trader, had no financial need either. Nonetheless, he bought $1.7 million worth of shares with inside information and netted over $900,000 in criminal profits. All three defendants—and particularly Federico and Mauro Nannini—had an opportunity to come clean and accept responsibility when a regulator scrutinized their trades. Instead, they covered it up: Federico lied to his employer and claimed he did not know Thermiotis; Mauro offered to swear out a false attestation claiming that he did not trade on inside information.

Custodial sentences are necessary for all three defendants to send a clear message that cheating the United States' securities markets will not be tolerated here.

## SUMMARY OF THE GUIDELINES CALCULATIONS

Below is a summary of the guidelines, as calculated by U.S. Probation, the Government, and the defendants. All defendants pled to the same offense (18 U.S.C. § 371) and agree that the base offense level is 8 under § 2B1.4(a). All three defendants are first time offenders who accepted responsibility. None received a role enhancement. Their guidelines vary because: (i) each is responsible for a different loss amount (Federico is responsible for Mauro and Thermiotis's total gain; Mauro and Thermiotis are responsible for their respective gains); (ii) only Federico receives the Abuse of Trust adjustment (although his lawyers disagree); and (iii) Thermiotis is the only one who cooperated and received a § 5K1.1. motion.

| Defendant | Loss – Gov/Prob. | Loss – Defendant | Trust-Gov/Prob. | Trust-Defendant | Guidelines-Gov/Prob. | Guidelines-Defendant | 5K1.1 |
|---|---|---|---|---|---|---|---|
| Federico Nannini | +14 (2B1.1(b)(1)(H)) (Between $550,000 to $1,500,000) | +14 (2B1.1(b)(1)(H)) (Between $550,000 to $1,500,000) | +2 (3B1.3) | N/A | Level 19 (30-37 mos) Zone D | Level 17 (24-30 mos) Zone D | N/A |
| Mauro Nannini | +10 (2B1.1(b)(1)(F)) (Between $150,000 to $250,000) | +8 (2B1.1(b)(1)€) (Between $95,000 and $150,000) | N/A | N/A | Level 13 (12-18 mos) Zone C | Level 11 (8-14 mos) Zone B | N/A |
| Alejandro Thermiotis | +14 (2B1.1(b)(1)(H)) (Between $550,000 to $1,500,000) | +14 (2B1.1(b)(1)(H)) (Between $550,000 to $1,500,000) | N/A | N/A | Level 17 (24-30 mos) Zone D | Level 17 (24-30 mos) Zone D | 25% |

## RELEVANT FACTUAL SUMMARY

*The Insider Trading*

As the Court is aware, from July 2021 to January 5, 2023, Federico was employed on a full-time basis as an associate in the Mergers and Acquisitions Transaction Advisory Team at Global Consulting Firm 1's Miami office (DE 94 at ¶105). He earned a salary of approximately

$70,000-75,000 (*id*). Federico agreed to comply with Global Consulting Firm 1's insider trading policy, which stated that employees "may not use material, non-public information (MNPI) to trade in the securities of any company, including a [Global Consulting Firm 1] company. You may not engage in unlawful tipping. This holds true regardless of the source of the information." (DE 94 at ¶22).

In June 2022, Federico was assigned to assist with the proposed corporate acquisition of Infrastructure and Energy Alternative Inc. ("IEA") by Global Consulting Firm 1's client, MasTec, Inc. ("MasTec") (the "Proposed Acquisition"). This was not the first time Federico had been assigned to a MasTec acquisition – he had worked on a prior, confidential, acquisition. Federico knew that the fact of the acquisition was confidential and MNPI, as he admitted in his factual basis.

Federico illegally tipped his father Mauro and his friend Thermiotis from the time he became aware of confidential information in June 2022, up until the acquisition became public on July 25, 2022. Federico tipped Thermiotis over text message, assessing the likelihood that the Proposed Acquisition would go through and the likely strike price. He was more careful with Mauro, and the investigation did not reveal the two texted about the inside information. However, Federico lived with Mauro in Coral Gables and cellcite data put them together at a critical time in the insider trading. And Mauro's trading activity was in lockstep with Federico's access to insider information (and Federico's real time perception as to whether the deal would go through, as communicated to Thermiotis).

Mauro and Thermiotis amassed significant positions in IEA based on the MNPI Federico misappropriated. Mauro and Thermiotis sold their IEA shares at a profit the same day Bloomberg made the acquisition public. Thermiotis profited $924,000, and Mauro profited $180,000 that

day.[1]  Thermiotis offered to buy Federico a Rolex and the two shared texts back and forth about the make and model (selling for approximately $30,000).  It never came to fruition, as Federico's employer was alerted to the trades by a regulator, as discussed below.

*The Cover-Up*

In December 2022, Federico and Mauro Nannini had the opportunity to come clean to Federico's employer.  But they didn't.  Quite the opposite, they doubled down and tried to cover up their insider trading.  The Financial Industry Regulatory Authority ("FINRA") provided a list to Global Consulting Firm 1, via MasTec, listing people who traded in IEA around the time of the acquisition.  The FINRA list identified Mauro Nannini and Alejandro Thermiotis.  On December 28, 2022, Federico lied to his employer about knowing Thermiotis, stating in an email: "I received the list and I see my parents… M. Nannini and/or [his mother] on the list."  Later that day, Federico emailed his employer and a MasTec representative that he, "did not know any other individuals and/or entities on the FINRA list other than my parents."  At approximately 11:00 p.m. on this same date, Mauro took a screenshot of a March 7, 2022, article announcing IEA's 2021 fourth quarter and full year results.  DE93, ¶ 56.  This type of after the fact cover up is done in insider trading case to paper over the fact that the defendant traded on inside information.

Global Consulting Firm 1 went further to investigate the trades on the FINRA list, requesting that Federico (i) provide his cellphone for forensic imaging and (ii) sit down for an interview with outside counsel.  Counsel for the Nanninis, Randy Jones, drafted an email that he sent to both Federico's Georgetown business school email address and Mauro's Gmail address, as well as a representative of Global Consulting Firm 1 (BRG_0000016).  In the email, Mr. Jones said he was acting as the "legal representative[]" of both Federico and Mauro, and he offered to

---

[1] Co-defendant Francisco Tonarely, a remote tippee, made just over $1,500 from the scheme.  He did not take part in the conspiracy's cover-up.  He is currently completing pre-trial diversion.

provide "an attestation … that [Mauro] did not use any information that was not available to the public in pursuing these [IEA] trades, on which he lost money, and also gained money." (BRG_0000016).  Mr. Jones also offered in the email to have Federico search his cellphone for relevant information but did not agree to provide the full cellphone to Federico's employer as requested.  Federico's employer held firm on requesting his entire cellphone.  Ultimately, Federico resigned, his cellphone was not provided, and Mauro never submitted an attestation falsely stating he did not trade on public information.

*The Arrest*

While in custody, the four defendants received a copy of the Indictment filed against them. The Indictment detailed numerous text messages sent by Federico concerning the insider trading scheme.  According to a post-arrest statement provided by Thermiotis on October 13, 2024, after they received copies of the Indictment, Thermiotis heard Mauro tell Federico "I told you not to text about this."  (DE94 at ¶57).  Mauro objected to this paragraph of the PSR and "denies making this statement."[2]  DE93, Ex. 1 at page 2.  Federico filed a clarification of this paragraph of the PSR, stating "he does not recall his father making this statement." DE94, Ex. 1.

---

[2] The Government has asked counsel for Mauro to verify if he indeed disputes Thermiotis's statement such that the United States will need to prove that fact at sentencing.  The Government is waiting for a response.

# ARGUMENT

## I. Sentencing Law

"[T]he district court must consider several factors [set forth in 18 U.S.C. § 3553(a)] to determine a reasonable sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims." *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005) (internal quotations and citations omitted).

And though the sentencing guidelines are only advisory, a major variance from the guidelines range "should be supported by a more significant justification than a minor one," and a court must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall v. United States*, 552 U.S. 38, 50, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007); *see also United States v. Irey*, 612 F.3d 1160, 1196 (11th Cir. 2010) (en banc) ("Although there is no proportionality principle in sentencing, a major variance does require a more significant justification than a minor one ....").

## II. The Court should place particular emphasis on the nature and circumstances of the offense, the seriousness of the offense, and the need for deterrence.

The Court should place particular emphasis on three factors: the nature and circumstances of the offense, respect for the law, and the need for deterrence. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (stressing that the sentencing court "is permitted to attach

great weight to one factor over others" and that the "decision about how much weight to assign a particular sentencing factor [is] committed to the sound discretion of the district court.") (internal citations omitted).

### A.     The nature and circumstances of the offense.

Two aspects of the offense require highlighting. First, the number of times Federico passed inside information during the scheme. Federico did not tell his father information on one occasion in a fleeting moment. Rather, for weeks on end he kept his father and close friend attuned to every machination in the Proposed Acquisition. When the due diligence began, Federico shared the information, and Mauro and Thermiotis acted on it. When there was a chance the deal would not go through, Federico relayed that too, and Mauro acted on it by selling stock. And when it appeared that the deal was back on, Mauro and Thermiotis were quickly apprised, and Mauro was able to buy back in. This was not a fleeting moment of poor judgment. This was a concerted campaign to utilize MNPI for the conspirators' profit.

Second, the cover-up. All three defendants are pleading guilty and deserve credit for accepting responsibility. However, when given the chance, outside a court of law, to tell the truth, they did the opposite. Federico lied about who he knew; Federico and Mauro lied about sharing and trading on inside information; they hired an attorney to prosecute those lies; they offered a fraudulent attestation; and Mauro took photographs to try and create alibis to cover-up their scheme. And Thermiotis did not come clean either. This fraudulent conduct is not captured by the Guidelines and should be given great weight under the § 3553(a) factors. *See United States v. Goffer*, 721 F.3d at 131 (noting that, as part of the offense conduct that required significant punishment, "Goffer took steps to disguise his wrongdoings by distributing disposable cell phones,

7

using fake research to cover his illegal trades, and refusing to speak about sensitive topics on the telephone.")

### B. The seriousness of the offense.

Insider trading crimes threaten the integrity of our securities market. *S.E.C. v. Payton*, 97 F. Supp. 3d 558, 559 (S.D.N.Y. 2015) ("The United States securities markets—the comparative honesty of which is one of our nation's great business assets—cannot tolerate such cheating if those markets are to retain the confidence of investors and the public alike."); *see also United States v. Howard*, 28 F. 4th 180, 207 (11th Cir. 2022) ("White collar medical crimes like Bramwell's are serious because they can disrupt health care markets."). A sentence of incarceration is required here, in light of the calculated and deliberate nature of the scheme and the amount of gain to the participants.

For example, when a defendant pleaded guilty to one count of making a false statement for the purpose of receiving credit from a bank, in violation of 18 U.S.C. § 1014, the Eleventh Circuit said the scheme "was a serious one." *United States v. Crisp*, 454 F.3d 1285, 1286, 1290 (11th Cir. 2006); *see id*. at 1287–88, 1292 (vacating as substantively unreasonable a sentence of five hours of imprisonment and five years of supervised release with 12 months of it to be served in home detention). That scheme extended over a period of approximately 8 months and the loss amount of the victim bank totaled less than a half million dollars. *Id*. at 1290. As the Eleventh Circuit found: "For such a serious offense, however, Crisp did not receive so much as a slap on the wrist — it was more like a soft pat." 454 F.3d at 1291.

### C. The need for deterrence.

The Eleventh Circuit recently observed: "General deterrence is more apt, not less apt, in white collar crime cases." *United States v. Howard*, 28 F.4th 180, 209 (11th Cir. 2022). The

reason is that "economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity," which makes them "prime candidates for general deterrence." *United States v. Kuhlman*, 711 F.3d 1321, 1329 (11th Cir. 2013) (internal citations omitted). Courts have routinely noted the appropriateness of significant sentences in the context of financial crimes, including specifically insider trading, committed by defendants who make the calculation that white collar crime is "a game worth playing." *United States v. Goffer*, 721 F.3d 113, 132 (2d Cir. 2013) (quoting district court and affirming sentence of 66 months' imprisonment for insider trading offense).  As the Eleventh Circuit has noted, in passing the Sentencing Reform Act, "Congress was especially concerned that prior to the Sentencing Guidelines, [m]ajor white collar criminals often [were] sentenced to small fines and little or no imprisonment.  Unfortunately, this creates the impression that certain offenses are punishable only by a small fine that can be written off as a cost of doing business." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).

With the rise of retail investing, and the growth of financial firms in the South Florida, strong, incarcerative sentences are necessary to deter investors from sharing, and trading on, MNPI.

> **D.** **The Court should not give weight to any future licensing implications or convicted felon status.**

The Eleventh Circuit recently reversed as substantively unreasonable a non-custodial sentence for a physician convicted at trial of taking kickbacks to write certain prescriptions. *Howard*, 28 F. 4th at 206.  The court held that it was an abuse of discretion for the District Court to vary downward to a sentence of probation because the physician would lose her medical license because of her conviction.  The Eleventh Circuit noted:

> We have encouraged our district court colleagues to keep in mind that criminals who have the education and training that enables people to make a decent living

9

>without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime.

*Id*. at 210 (internation citations omitted).

The Eleventh Circuit further held that it was an abuse of discretion for the District Court o vary downward to a sentence of probation because the physician would be a "a convicted felon going forward." *Id*. at 215. The Eleventh Circuit noted that a large number of defendants are sentenced under the guidelines for committing felonies ever year and: "It is just an expected, ordinary, everyday fact of life for defendants sentenced under the guidelines." *Id*.

Here, any future inability for these three defendants to become traders or obtain licensure in the financial industry is not a basis for a variance from the guidelines to a non-custodial sentence. Nor is the fact that the defendants will now be convicted felons.

**III.   Recent insider trading sentences support Guidelines, custodial sentences for the defendants.**

As a Southern District of New York District Judge put it, "insider trading is an easy crime to commit but a difficult crime to catch." *United States v. Gupta*, 904 F. Supp. 2d 349, 355 (S.D.N.Y. 2012) ("Others similarly situated to the defendant must therefore be made to understand that when you get caught, you will go to jail."). To be sure, according to the U.S. Sentencing Commission data analyzer tool, between the years 2015 and 2023, there were only 163 cases reported where the defendant was sentenced under the primary guideline of insider trading (§ 2B1.4). The breakdown of the sentences is: less than two years (77.3%), 2 to less than 5 years (19.6%), and 5 to less than 10 years (3.1 %). The average sentence was 14 months. And 18.4 percent of cases went to trial (higher than the average of 4.5% for cases during that time frame sentenced under 2B1.1). It is worth noting that the first-time offender reduction was not available during this time frame for which sentencing data is available. When it comes to insider trading

defendants who profited in the same ballpark as these defendants, there is ample authority to support the range of sentences requested by the government in this case:

| Defendant | Approx. Gain | Disposition | Notes / Role |
|---|---|---|---|
| Stephen Buyer (Age 64)<br><br>22-CR-397-SDNY | $349,846.61 | Convicted at trial<br><br>22 months | Former Congressman worked as consultant; misappropriated MNPI learned through consulting work including two mergers |
| Anthony Viggiano (27)<br><br>23-CR-497-SDNY | $225,083 | Pled guilty<br><br>13 months | Tippee; multiple year scheme; |
| Stephen Forlano Jr.<br><br>23-CR-497-SDNY | $225,083 | Pled guilty<br><br>28 months | Tipper; worked at Goldman and Blackstone and passed MNPI to two friends; |
| Tyler Loudon (42)<br><br>24-cr-57-SDTx | $1.7mm | Pled guilty<br><br>24 months | Eavesdropped on wife's calls while working from home; scheme less than 2 months; wife worked in M&A at international oil and gas company; |
| Shahriyar Bolandian (36)<br><br>15-00465-Cr-CDCal | $650,000 ($200k for co-conspirator Sadigh; $450k for Bolandian and his family) | Convicted at trial<br><br>24 months | Tippee; good friend Aggarawal worked at JP Morgan and passed on MNPI; |
| Kevan Sadigh<br><br>15-00465-Cr-CDCal | $650,000 ($200k for Sadigh; $450k for co-conspirator Bolandian and his family) | Convicted at trial<br><br>24 months | Remote Tippee; |

**IV.    Recent Amendment on Youthful Offenders.**

The age of Federico Nannini and Alejandro Thermiotis at the time of their insider trading – 24 – is a factor for the Court to consider in fashioning a sentence but not a basis for a departure or variance. As noted by one neuroscientist at a March 2024 U.S. Sentencing Commission hearing on youthful offenders, departures based on age are generally disfavored for crimes committed by those 18 years old and older because, in his view, "these offenders generally have enough of the

11

right stuff, even though they will surely have more of it as they age." (Tr. Hrg. Amendment 829, page 25, Testimony of Univ of Pennsylvania Professor of Psychology/Law in Psychiatry, Dr. Stephen Morse).

At issue in this March hearing was a recent change to Guideline Departure Provision in 5H1.1 for youthful offenders.  In 2023, § 5H1.1 provided that: "Age (including youth) may be relevant in determining whether a departure is warranted, if considerations . . . are present to an unusual degree."  In 2024, that language in 5H1.1 changed to now read:

> A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation.

The testimony at the hearing on this change to the youthful offender departure focused on how age, combined with these risk factors, may be a basis for a departure (Tr. Hrg. Amendment 829, page 33, Professor in the Department of Psychological and Brain Sciences at Drexel University, Dr. Kirk Heilbrun) ("The more risk factors you experience, the more difficult it becomes to develop what Professor Morse has called the right stuff, which I like. That's a really important consideration.").  Here, the defendants do not exhibit the risk factors identified in 5H1.1. To the contrary, they have lived otherwise law-abiding lives replete with higher education and appropriate levels of responsibility.  A departure, therefore, is not supported on this record.

## **UNITED STATES' SENTENCING RECOMMENDATIONS**

Guidelines sentences are appropriate for all three defendants here.  Federico, the most culpable defendant given his role as the insider, deserves the most significant custodial sentence. It is the United States position that he should be sentenced at the low-end of the guidelines range

(33 or 24 months, depending on the guidelines), given his age at the time of the offense.  Mauro is the second most culpable defendant, given his age and experience level, despite the fact that his profit was smaller than Thermiotis.  The United States will be recommending that Mauro be sentenced at the high end of the guidelines range (18 months as proposed by the government).  Given that Thermiotis cooperated, and in light of his age, the United States will be recommended a sentence at the low-end of the guidelines range after cooperation (18 months).

## RESTITUTION, FORFEITURE AND FINES

Mauro will pay his full forfeiture money judgment amount at the time of sentencing and it is the Government's understanding that Thermiotis will as well.  The government is not seeking forfeiture from Federico.  The three defendants are in negotiations with counsel for Global Consulting Firm 1, in the hopes of having a joint recommendation regarding restitution at the time of sentencing.  Assuming the three defendants resolve restitution at the time of sentencing, the government will not be seeking fines.  In addition to the forfeiture money judgments and restitution, the three defendants will also resolve a parallel Securities and Exchange Commission case that will carry with it some form of penalties in an amount yet to be determined.

Dated:  March 20, 2025                        Respectfully submitted,

                                                  HAYDEN O'BYRNE
                                                  UNITED STATES ATTORNEY

By:    /s/    Elizabeth Young
                ELIZABETH YOUNG
                ALEXANDRA D. COMOLLI
                ELI S. RUBIN
                Assistant United States Attorneys
                Court ID No. A5501858
                Elizabeth.Young@usdoj.gov
                United States Attorney's Office
                99 Northeast 4th Street
                Miami, Florida 33132-2111
                Tel: (786) 761-3153